COLON v. TOWN OF WEST HARTFORD, (Conn. 2001)
Case 3:01-cv-01724-AVC    Document 26-2    Filed 06/01/2004    Page 1 of 9
Page 1 of 9

LOIS Federal District Court Opinions

1

COLON v. TOWN OF WEST HARTFORD, (Conn. 2001)

JOSE COLON v. TOWN OF WEST HARTFORD, ET AL.

CIVIL NO: 3:00CV168(AHN)

United States District Court, D. Connecticut>

January 21, 2001

RULING ON MOTION OF SOME DEFENDANTS TO DISMISS
AND MOTION FOR SANCTIONS

ALAN H. NEVAS, United States District Judge

This action is brought by Jose Colon ("Colon"), a former West Hartford police officer, against the Town of West Hartford ("West Hartford"), numerous members of its police department, the West Hartford News, its editor and one of its reporters. Colon asserts claims under 42 U.S.C. § 1983, Title VII, 42 U.S.C. § 2000e, the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60, and state law claims of defamation and intentional infliction of emotional distress.

Presently pending is the Fed.R.Civ.P. 12(b)(6) motion of the West Hartford News, Timothy Kay ("Kay") and Elisabeth Strillacci ("E. Strillacci") (collectively the "Newspaper Defendants") to dismiss counts one, six, seven and eight of the complaint [doc. #31]. Also pending is the Newspaper Defendants' motion for sanctions [doc. #22] against Colon and his attorney.

FACTS

The following facts as alleged in the amended complaint are accepted as true for the purpose of this motion to dismiss.

Colon, a Puerto Rican male, was hired in March, 1994, by West Hartford as a police officer. He alleges that, during the course of his employment, the defendants violated his right to equal protection and discriminated against him on the basis of race and ethnic origin.

Colon asserts that Stephen Lovett ("Lovett"), the assistant chief of police, told him in August, 1994, that he was too aggressive and cocky and that he shouldn't make friends with other officers. Lovett also denied Colon every educational program he requested. After Colon had been employed for one and one half years, Lovett disciplined him with a one-day suspension for allegedly failing to timely file a case report. Lovett also rejected Colon's application for assignment to the Emergency Response Team ("ERT"). Lovett placed Colon on secret probation and told him he would be included in the ERT if he did not get into trouble for nine months. Lovett also subjected Colon to a four-month period of continuous harassment for the way he attempted to calm victims of an indecent exposure. Specifically, Lovett mischaracterized and criticized Colon's use of the term "woody" in connection with that incident.

On May 17, 1999, while Colon was driving his police cruiser, he was involved in a motor vehicle accident with a Hartford police cruiser. On June 6, 1999, without notice to Colon's union and without a hearing,

*2*

Lovett suspended Colon for fifteen days for the motor vehicle accident. Lovett stated that Colon deserved an even greater punishment for the incident.

On July 16, 1999, Colon filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), complaining that his treatment by the department constituted discriminatory, disparate harassment and treatment based on his race in violation of his civil rights.

Colon further alleges that in retaliation for filing the CHRO complaint, the defendants initiated a pattern of harassment, stricter scrutiny and discipline, unlawful disclosure of his personnel file information, and defamation. With regard to the defamation, he contends that the Newspaper Defendants willfully collaborated with, worked in concert with, and jointly engaged in retaliation against Colon by publishing a newspaper article entitled "What Did He Say?" on August 12, 1999. The article was written by E. Strillacci, the wife of defendant James Strillacci ("Chief Strillacci"), Chief of the West Hartford Police Department. The article contained private, non-public personnel file information about Colon and information from his CHRO complaint. This information had been illegally and unethically disclosed to E. Strillacci by Chief Strillacci. The article, which appeared in the "Around Town" column of the paper on the "Opinion & Comment" page, stated:[fn1]

Okay, this column may upset some people, so I want to prepare you.

I want to make it clear what I am taking a stand on here.

A police officer has filed a complaint with the Commission on Human Rights and Opportunities because he thinks that he has been punished for actions based on the fact that he is Hispanic.

Okay, he's got a right to file a complaint, and he's got a right to his opinion, and I am not commenting at all on whether or not his punishment was justified.

I am also not commenting on whether his complaint is valid.

That isn't my purvue, and as they say, "I ain't touching that one."

However, I am taking hard, serious, close to outraged offense at something he has included in his complaint.

This officer received some sort of reprimand for using the word "woody," which refers to a male erection, to be blunt, in talking to the victim of a flasher.

This was a young woman to whom a man exposed his private body parts.

This police officer doesn't think he should have gotten in trouble for making such a comment.

Maybe to some people it doesn't seem like a big issue. But if you are the victim and you are upset by it, you are entitled to your feelings.

Certainly in this day and age, we have all learned that it is wrong to make a victim feel responsible for sexual harassment or sexual assaults, right? Especially in jobs like those of a police officer, where sensitivity training has been incorporated into the job for some time, a person is supposed to know how to handle a victim.

But not this guy. What he said was something to the effect that the

Case 3:01-cv-01724-AVC    Document 26-2    Filed 06/01/2004    Page 3 of 9
COLON v. TOWN OF WEST HARTFORD, (Conn. 2001)                     Page 3 of 9

*3*

victim must have excited the man.

I don't know about you, but I can draw the next inference easily — his behavior must be excused by the fact that he couldn't help his reaction to her beauty. . . .

And this police officer was way out of line to make such a rude, thoughtless and insensitive comment to the victim.

What galls me most of all is that he thinks what he said was no big deal, not worth getting in trouble for.

That kind of comment is simply unacceptable, particularly from a professional who should know better . . .

I'm offended, outraged, insulted, disappointed and, frankly embarrassed for the department, and I think every woman in town, and every man in town who cares about a woman, should be upset at the very least.

With this man's badge comes a great deal of respect from the general public, but with it also comes a great deal of responsibility. It comes with a sworn oath to protect and serve — everyone.

The Newspaper Defendants refused to retract the false and defamatory portions of the article.

Thereafter, on September 28, 1999, Colon was involved in an off-duty arrest of two men who were burglarizing cars. In connection with the arrest, Colon was forced to subdue one of the suspects. The suspect did not complain, but the other officers who were involved in the arrest were coerced into falsely stating that Colon punched the suspect in the back. Colon was suspended indefinitely for this incident. In addition, the defendants applied for an arrest warrant charging him with assault, tampering with a witness and interfering with a police officer. Thereafter, Colon was arrested and falsely charged with third degree assault.

During a local-access cable TV show, Chief Strillacci discussed that incident and the discipline he would impose on Colon. This occurred before the internal affairs investigation was completed and before the pre-termination hearing was held. Also, before the investigation was completed, Chief Strillacci made a statement to the Hartford Courant on November 16, 1999 that Colon struck a suspect in front of five witnesses.

On November 17, 1999, a pretextual pre-termination hearing was held. On December 12, 1999, Colon was wrongfully terminated from his position as a West Hartford police officer.

STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), a court is required to accept as true all factual allegations in the complaint and must construe any well-pleaded factual allegations in the plaintiff's favor. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Easton v. Sundram, 947 F.2d 1011, 1014-15 (2d Cir. 1992). A court may dismiss a complaint only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Still v. Debuono, 101 F.3d 888, 891 (2d Cir. 1996). The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D.Conn. 1990) (citing Scheuer,

416 U.S. at 236).

DISCUSSION

The Newspaper Defendants are named in four of the eight counts of the complaint. Count one alleges a violation of § 1983 based on a denial of equal protection against the individual police officers and the Newspaper Defendants. Count six alleges a claim for retaliation in violation of the CFEPA against the individual police defendants and the Newspaper Defendants. Count seven is a defamation claim against Chief Strillacci and the Newspaper Defendants. Count Eight is a claim of intentional infliction of emotional distress against all defendants.

The Newspaper Defendants move to dismiss these four counts. They assert that the newspaper article that forms the basis of Colon's claims against them is an editorial and is thus absolutely privileged. They also maintain that the remaining counts are derivative of the non-actionable newspaper column and must also be dismissed. Further, they assert that, regardless of the merits of the defamation claim, the § 1983 claim must be dismissed because they are not state actors and the conclusory allegations of a conspiracy between them and a state actor are insufficient to support the § 1983 claim against private persons.

I. The Defamation Claim

The Newspaper Defendants maintain that the August 12, 1999, article in the West Hartford News is an editorial that represents the writer's opinion and as such enjoys an absolute constitutional privilege.

In opposition, Colon maintains that the article is not absolutely privileged because it contains a mixture of fact and opinion as well as unsubstantiated inferences that are drawn from inaccurate statements of fact. He cites three statements that he says convey an inaccurate, false and malicious portrayal of him and which render the article defamatory. Those three statements are:

(1) the statement "what he said was something to the effect that the victim must have excited the man."

(2) the statement that the officer "doesn't think he should have gotten in trouble for making such a comment . . . What galls me most of all is that he thinks what he said was no big deal, not worth getting in trouble for."

(3) that the officer "has filed a complaint with the Commission on Human Rights and Opportunities because he thinks that he has been punished for actions based on the fact that he is Hispanic."

Contrary to Colon's arguments, the court, after considering the article in its entirety and in the context in which it was published, concludes as a matter of law that the writer was making a statement of opinion, not fact, and as such, the article enjoys an absolute privilege. See Goodrich v. Waterbury-Republican American, Inc., 188 Conn. 107, 119 (1982) (holding that the determination of whether a statement is a factual assertion or an opinion is a question of law for the court); Mr. Chow of N.Y. v. Ste. Jour Azur, S.A., 759 F.2d 219, 224 (2d Cir. 1985) (same).

It is well settled that expressions of pure <opinion>, as opposed to factual assertions, may not be the basis of a <defamation action. See e.g., Buckley v. Littell, 539 F.2d 882, 896 (2d Cir. 1976) (citing Gertz v. Robert Welch, Inc. 418 U.S. 323, 401 (1974)); Goodrich, 188 Conn. at

*5*

117.

   Pure opinion is a personal comment about another's conduct,
qualifications or character that has some basis in known or disclosed
facts. See Goodrich, 188 Conn. at 111 (holding that expressions of
opinion based on disclosed facts have virtual complete constitutional
protection). However, an opinion that criticizes or comments on facts that
are not stated or known is not protected as pure opinion because it
implies that the writer knows certain facts that are not disclosed to the
reader which support his opinion and are detrimental to the person he is
writing about. See id. at 118. Even an opinion that appears to be in the
form of a factual statement may still be an opinion "if it is clear from
the context that the maker is not intending to assert another objective
fact but only his personal comment on the facts which he has stated."
Id. at 111.

   However, the critical distinction between opinion and fact is not easy
to discern. See e.g., Mr. Chow, 759 F.2d at 224; Janklow v. Newsweek,
Inc., 788 F.2d 1300, 1302 (8th Cir. 1986) ("it is hard to draw a bright
line between `fact' and `opinion.'"); see also Sanford, Libel and Privacy
§ 5.1 (Supp. 1997) ("No area of modern libel law can be murkier than
the cavernous depths of this inquiry"). The court's task is to determine
"whether the words complained of, considered in the context of the entire
communication and of the circumstances in which they were spoken or
written, may be reasonably understood as implying the assertion of
undisclosed facts justifying the opinion." Steinhilber v. Alphonse,
68 N.Y.2d 283, 290 (1986) (citing Restatement (Second) of Torts § 566
comment c).

   Here, considering the entirety of the writing in the context in which
it appeared, the surrounding circumstances, and the language used, it is
apparent that it does not state or imply derogatory undisclosed facts
about Colon. See Mr. Chow, 759 F.2d at 226; Yavis v. Sullivan,
137 Conn. 253, 259 (1950); Davis v. Ross, 754 F.2d 80, 83 (2d Cir. 1985)
(stating that the meaning of a writing "depends not on isolated or
detached statements but on the whole apparent scope and intent."). To the
contrary, the article is merely the author's personal opinion about
Colon's conduct and character and is based on known or disclosed facts.

   The article appears on the page entitled "Opinion & Comment." By
the very nature of this type of page, the average reader is influenced to
read articles found thereon as containing opinions, not facts. See
Aldoupolis v. Globe Newspaper Co., 398 Mass. 731, 734 (1986) (noting that
reasonable readers expect to read views and opinions as opposed to
factual news stories on editorial pages); Ollman v. Evans, 750 F.2d 970,
986-87 (D.C. Cir. 1984). In addition, the article expressly states that
the writer is "commenting on" and "taking a stand" on the actions and
conduct of an unnamed police officer. This type of cautionary language is
a strong signal to an average reader that he is reading the writer's
opinion, not statements of fact. See Ollman, 750 F.2d at 982-83.
Moreover, there is nothing in the tenor of the language used that would
cause the average reader to believe that the remarks were going beyond
opinion into the realm of fact. An author is constitutionally permitted to
use exaggeration, hyperbole, ridicule, sarcasm, stylistic touches and
figurative expressions to embellish disclosed facts. See Milkovich v.
Lorain Journal Co., 497 U.S. 1, 20 (1990) (explaining that statements
that are within the category of "rhetorical hyperbole" or imaginative
expression" are not actionable because they "cannot reasonably [be]
interpreted as stating actual facts"); Goodrich, 188 Conn. at 122 (noting
that opinion writers are not limited to dry recitations but are
constitutionally permitted to use colorful expressions as well as
exaggeration, hyperbole, ridicule, sarcasm and invective). Finally, the
author discloses the factual basis for her opinions — that a police

COLON v. TOWN OF WEST HARTFORD, (Conn. 2001)                     Page 6 of 9

6

officer filed a complaint with the CHRO because he thought he was
punished for actions based on the fact that he is Hispanic and that one of
those actions was a reprimand for using the word "woody" in talking to
the victim of a flasher. There is nothing in the article that implies the
existence of other, nondisclosed facts on which the author's comments are
based. See Milkovich, 497 U.S. at 18 (stating that the constitution
offers no wholesale protection for expressions of opinion if they imply
assertions of objective fact)

    Even the specific statements that Colon challenges are able to
withstand scrutiny when they are viewed in the context of the entire
article. The use of the words "something to the effect that" sufficiently
gives a signal to a reasonable reader that the statement "what he said
was . . . that the victim must have excited the man" was not to be taken
literally. Indeed, those cautionary words make it clear that the author
is engaging in speculation or conjecture. See King v. Globe Newspaper
Co., 400 Mass. 705, 713 (1987).

    Similarly, the reasonable reader would not take literally the statement
that the officer "doesn't think he should have gotten in trouble for
making such a comment . . . What galls me most of all is that he thinks
what he said was no big deal, not worth getting in trouble for." Here the
author is using Colon's "voice" as a stylistic device to convey her
opinion as to what his conduct said to her about his character. There is
nothing in this statement that implies the author is basing her opinion
on undisclosed facts or is making an assertion of fact.

    Finally, the statement that the officer "has filed a complaint with the
Commission on Human Rights and Opportunities because he thinks that he
has been punished for actions based on the fact that he is Hispanic" is
true and is a known or disclosed fact. Colon had indeed filed a CHRO
complaint alleging that he was reprimanded for using the term "woody" in
trying to calm the victim of a flasher and that he believed he was
reprimanded for doing so because he is Hispanic. The fact that Colon
filed the CHRO complaint, as well as the details of Colon's claims of
harassment, were reported in the Hartford Courant approximately two weeks
before the article at issue was published.

    In sum, none of the three challenged statements can, when read in the
entire context of the article, be reasonably understood as implying the
existence of undisclosed facts on which the author's comments are based.
See Steinhilber, 68 N.Y.2d at 289 (citing Restatement (Second) of Torts
§ 566 comment c). A reasonable person could only view the article as
a personal comment of the author's opinion and as such, it is
unqualifiedly protected by the First Amendment. See Goodrich, 188 Conn.
at 124; Gertz v. Robert Welch, Inc., 418 U.S. at 401; Levin v. McPhee,
119 F.3d 189, 196 (2d Cir. 1997) (noting that a statement is not
actionable as an opinion where no reasonable reader could conclude that
it was conveying undisclosed facts about the plaintiff).

                II.   Emotional Distress and CFEPA Claims

    The Newspaper Defendants maintain that Colon's emotional distress and
CFEPA claims are derivative of the defamation claim and thus must be
dismissed if the defamation claim is found to be constitutionally
privileged. They maintain that a plaintiff can not do an end run around
the First Amendment by recasting a meritless defamation claim against the
media as another cause of action. The court agrees.

    The Supreme Court has held that a plaintiff may not use a claim for
emotional distress "to circumvent the established and carefully balanced
framework of constitutional and state libel law." Hustler Mag. v.
Falwell, 485 U.S. 46, 56 (1988); see also Howell v. New York Post Co.,

7

81 N.Y.2d 115 (1993) (dismissing privacy claim where publication of picture was found constitutionally protected and holding that the same constitutionally protected publication could not support a claim for emotional distress); Desnick v. ABC, Inc., 44 F.3d 1345, 1355 (7th Cir. 1995) (citing Hustler, 485 U.S. at 46); see also Partington v. Bugliosi, 56 F.3d 1147, 1160 (7th Cir. 1995) (dismissing defamation claim because statements were protected by the First Amendment and holding that the same statements could not support a privacy claim); Cowras v. Hard Copy, 56 F. Supp.2d 207, 209 (D.Conn. 1999).

    For these reasons, the First Amendment bars Colon from recovering damages for his state law tort claims that are based on the constitutionally protected newspaper article. To hold otherwise would circumvent the established and carefully balanced framework of constitutional and state libel law. See Hustler, 485 U.S. at 57; see also Petyan v. Ellis, 200 Conn. 254-55 (1986) (holding that only unprivileged conduct can support a claim of intentional infliction of emotional distress).

### III. The § 1983 Claim Against the Newspaper Defendants

    The Newspaper Defendants give two grounds for dismissing the § 1983 claim against them. First, they maintain that the factual basis of this claim is the newspaper article. Because the article is privileged, it can not support the § 1983 tort claim, just as it can not support the emotional distress claim. Second, they contend that they are private persons, not state actors and are not subject to § 1983 liability unless they acted jointly with state actors. They maintain that Colon has not alleged facts demonstrating that they acted in concert with state officials and that his conclusory allegations of conspiracy are insufficient.

    In opposition, Colon says that the § 1983 claim is sufficiently pleaded in that he alleges that the Newspaper Defendants acted in concert with the other defendants and that Chief Strillaci and his wife agreed to retaliate against Colon by publishing private, non-public information from Colon's personnel file and that the information was illegally and unethically disclosed to E. Strillaci by her husband to be used in the newspaper article. The court does not agree.

    A private party involved in a conspiracy with state actors can be liable under § 1983, but to sustain such a claim, the plaintiff must allege facts showing an agreement or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right. See Marion v. Groh, 954 F. Supp. 39, 45 (D.Conn. 1997). Mere conclusory allegations of such an agreement are not enough. E.g., Dwares v. City of New York, 985 F.2d 94, 99 (2d Cir. 1993). A plaintiff should "make an effort to provide some details of time and place and the alleged effect of the conspiracy." Id. at 100. Complaints containing only conclusory, vague or general allegations that the defendants engaged in a conspiracy to deprive the plaintiff of constitutional rights are properly dismissed. See id. at 100.

    Here, Colon has only made vague and conclusory allegations that "the newspaper defendants willfully collaborated with, worked in concert with and jointly engaged in retaliation against the plaintiff for his seeking redress for his [CHRO complaint]." Neither this, nor the allegation that the Chief of the West Hartford police is married to one of the newspaper defendants is sufficient to sustain his pleading burden. Because Colon made no effort to provide the details of the alleged conspiracy, the claim must be dismissed.

## IV. The Motion For Sanctions

The Newspaper Defendants have also moved for Rule 11 sanctions against Colon and his attorney. They claim that Colon's claims are devoid of evidentiary and legal support and reflect plaintiff's and his counsel's failure to conduct a reasonable inquiry before filing his complaint. In support of this motion, they assert that Colon names Kay as a defendant and asserts that he was publisher of the paper "at all relevant times," but that Kay did not become employed by the paper until August 16, 2000, four days after the article was published. They maintain that plaintiff's counsel was told this before he filed the complaint, but he nonetheless asserted the claim against Kay. They also maintain that they are entitled to sanctions because the plaintiff filed the § 1983 claim against them without having any facts to support the existence of the alleged conspiracy. Finally, they claim that sanctions are warranted for the plaintiff's assertion of the defamation claim and the derivative state law claims because the editorial on which those claims are based is absolutely privileged.

In opposition, Colon states that the complaint accurately alleges that Kay was employed by the paper at the time he asked the paper for a retraction. Colon also maintains that the Newspaper Defendants are improperly using Rule 11 as a device to emphasize the merits of their position and that there is no basis for sanctions. The court agrees.

There is no merit whatsoever to the motion for sanctions. The Second Circuit has held on numerous occasions that there is a distinction between a claim that is unsuccessful and one that is both unsuccessful and sanctionable. See Salovaara v. Eckert, 222 F.3d 19, 34 (2d Cir. 2000). Colon's claims "were not so untenable as a matter of law to necessitate sanction. Nor did they constitute the type of abuse of the adversary system that Rule 11 was designed to guard against." Id. (quoting Mareno v. Rowe, 910 F.2d 1043, 1047 (2d Cir. 1990)).

### CONCLUSION

For the foregoing reasons, the Newspaper Defendants' motion to dismiss [doc. #31] is GRANTED. Counts one, six, seven and eight of the complaint are dismissed as to the West Hartford News, Timothy Kay and Elisabeth Strillacci. The defendants' motion for sanctions [doc. #22] is DENIED.

SO ORDERED

[fn1] As a general rule, matters outside the complaint cannot be considered on a motion to dismiss without converting the motion to one for summary judgment. See Fed.R.Civ.P. 12(b). However, where a plaintiff does not attach to the complaint or incorporate by reference a document on which it relies and which is integral to the complaint, a defendant may introduce that document as part of a motion attacking the pleadings. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991). The newspaper article is integral to the complaint, but the plaintiff did not incorporate it by reference or attach it as an exhibit to the complaint. Rather, the complaint only quotes selected portions of the article. The Newspaper Defendants submitted as an exhibit to their motion to dismiss a copy of the entire page of the newspaper in which the article appeared. Accordingly, the court considers the article in its entirety as it appeared in the newspaper.

COLON v. TOWN OF WEST HARTFORD, (Conn. 2001)

9

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved