UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| PATRICIA SANTORO and<br>CHET SANTORO | NO.: 301CV01724 |
| VS. | |
| BRUCE STORM | JULY 12, 2004 |

## BRIEF IN OPPOSITION TO DEFENDANT'S MOTION'S FOR SUMMARY JUDGMENT

### Facts

The plaintiffs' son is a varsity athlete in the Branford High School. The plaintiffs became concerned during the 2000/2001 academic year that the school's athletics programs were using uncertified coaches, thus putting their child at risk of injury, and the town at risk of claims for injury uncovered by municipal insurance. The plaintiffs researched their concerns by making inquiries to the State Board of Education and the American Red Cross.

On February 28, 2001, the plaintiffs presented their findings to the Branford Board of Education at a public meeting and asked what steps the board intended to take to assure compliance with the laws of the State of Connecticut. Among the conclusions reported to the board were the following:

    a. The high school's athletic director lacked the minimum education requirements mandated by law;

1

  b. The high school's athletic department was inadequately supervised by persons lacking the educational requirements mandated by law;

  c. The high school's football coach was not certified by state regulators;

  d. Many coaches in the athletic department lacked required training in First Aid and cardiopulmonary resuscitation;

  e. Many coaches in the high school lacked the minimum state certification to coach students in a public school.

The plaintiffs comments were made to board members at a public meeting and in accordance with the rules, regulations and procedures government the manner in which school board meetings were at the time conducted.

Defendant Storm then defamed the plaintiffs by telling a local newspaper reporter that certain documents produced by the plaintiffs at the February 28, 2001 meeting were fraudulent.

Defendant Storm further defamed the plaintiffs by publishing a memorandum to school board members on or about March 21, 2001, in which he stated that the plaintiffs had submitted "fake and potentially fraudulent" documents to the board at the board's February 28, 2001 meeting and that the plaintiffs had engaged in acts of fraudulent deception to obtain documents.

### Standard for Summary Judgment

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution. <u>R. B. Ventures, Ltd.</u>

v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997). "If reasonable minds could differ as to the import of the evidence...and if...there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." Id. at 59, quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988), and In re Japanese Elec Prods. Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).

"A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, '[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997). Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

When passing upon a motion for summary judgment, the court may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences against the moving party. Appleton v. Board of Education, 254 Conn. 205, 757 A.2d 1059 (2000); Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51 (2d Cir. 1991). The evidence of the party against whom summary judgment is sought must be believed. Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994). The court must

construe the evidence in the light most favorable to the party opposing summary judgment and deny the motion unless no construction of the evidence could support judgment in the plaintiff's favor. Appleton, supra; Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir. 1993); United States v. Certain Funds on Deposit in Scudder Tax Free Investment Account #2505103, 998 F.2d 129 (2d Cir. 1993); Union Pacific Corp. v. United States, 5 F.3d 523, 525 (Fed. Cir. 1993); Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105 (1994); D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434 (1980); Connell v. Colwell, 214 Conn. 242, 246-47 (1990). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party. So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied. In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

"In ruling on a motion for summary judgment, the court must decide whether there is a genuine issue of material fact. If there are issues of fact, the court may not resolve them without giving the parties a full hearing....Summary judgment is not appropriate in cases involving mixed questions of law and fact, such as negligence

4

actions....Summary judgment should not be used in cases that are complex...; in cases that concern important public issues or questions of inference as to motive or intent; ...or in ones that involve subjective feelings and reactions." Gould v. Mellick & Sexton, 66 Conn. App. 542, 556 (2001)

**Argument**

### Plaintiff States A Cause Of Action For Chilling Of Their First Amendment Right To Freedom Of Expression

In Laird v. Tatum, 408 U.S 1 (1972) the court concluded that "allegations of subjective chill are not an adequate substitue for a claim of specific present objective harm or a threat of specific future harm." Id. at 13-14 The issues in the Laird case are substantially different than in the instant case. Laird dealt with concerned citizens who could not articulate any foreseeable future chilling effect or harm, but couched their argument in broad strokes with the court concluding "(respondents) contend that the present existence of this system of gathering and distributing information,...constitutes an impermissible burden on (respondents)...which exercises a present inhibiting effect on their full expression and utilization of their First Amendment rights..." Id. at 10 Laird goes on to state "[i]n recent years this Court has found in a number of cases that constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights." Id. at 11 Indeed the Laird court decision can be clearly differentiated on the basis that in the instant case the plaintiffs are not seeking some broad-based

investigation into non-specific allegations, but are instead making a straight forward claim of clearly chilled First Amendment rights.

The defendant specifically addresses paragraph 19 of count two of the complaint as the reason the cause of action should fail. Actually it is paragraph 20 and it states, "as a direct and proximate result of the acts of defendant Storm, the plaintiffs have been chilled in the exercise of the right to freedom of speech in that they fear they will be *further* vilified and made the targets of public and untruthful statements should they dare to criticize town officials again." This is not a merely speculative statement of uncertainty–rather the plaintiffs are expressing a clear and concrete instance of the chilling effect regarding their right to speak out at another board of education meeting. The suggestion that the plaintiff's were not prohibited from attending any Branford Board of Education meetings only underscores the insidiousness of the chilling effect. According to the defendant's reasoning a plaintiff must subject themselves to further public humiliation and ridicule in order to avail themselves of legal protection. This flies in the face of reason and at the very least is a question of fact that a reasonable jury should answer.

The plaintiff clearly addressed the issue of their chilled rights during their depositions. Patricia Santoro was asked:

Q: How is it that you believe that your First Amendment rights were chilled?

A: I wouldn't go back to the Board with any problem.

(Deposition of Patricia Santoro, p. 102)

6

The defendant followed this question up with an assertion that the plaintiff did avail herself of the press by writing a letter to the editor. The appropriate standard for the court to examine is if in fact the plaintiff experienced a chilling effect on her right to speak out in a public forum without fear of retaliation for that public appearance. The plaintiff Chet Santoro honestly acknowledged in his deposition that he knew he was not prohibited from attending and speaking at school board meetings, it is the fact that he *will not* attend for fear of retribution for that appearance. Granted the plaintiffs did not attend many previous board meetings, but there is no requirement that they must attend a certain number before they may make a claim of chilled rights! The plaintiff need not crawl and hide under a rock forever, the mere fact that they were chilled with respect to appearing at board of education meetings is a sufficient question of fact for a reasonable jury to decide.

### The Doctrine Of Qualified Immunity Does Not Bar The Plaintiffs' Claim That The Defendant Chilled Their First Amendment Rights

The qualified immunity defense, properly understood, simply requires that liability be limited to those cases where "the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right....So conceived, the object of the 'clearly established' immunity standard is not different from that of 'fair warning' as it relates to law 'made specific' for the purpose of validly applying [the criminal counterpart to section 1983].... [B]oth serve the same objective, and in effect the qualified immunity test is simply the adaptation of the fair warning standard to give

7

officials (and, ultimately, governments) the same protection from civil liability and its consequences that individuals have traditionally possessed in the face of vague criminal statutes. To require something clearer than 'clearly established' would, then, call for something beyond 'fair warning.'" United States v. Lanier, 520 U.S. 259, 117 S. Ct. 1219, 1227 (1997).

In this case the defendant subjected the plaintiff to severe and harsh criticism and public ridicule with the express purpose of silencing them and discouraging them from any future attempts to address the board of education.

The Plaintiff has also met all three steps in the qualified immunity analysis as articulated in Harhay v. Town of Ellington, et al., 323 F.3d 206 (2d Cir. 2003). The first step consists of determining "whether the plaintiff has alleged a violation of a constitutional right. Then...if the violated right was clearly established at the time of the conduct...Finally,...plaintiff...must demonstrate that defendants' actions were not objectively reasonable....This three step inquiry should typically be done in sequential order." Id. At 211

Clearly the plaintiff allege a violation of their First Amendment rights. They do not, as suggested by defendant, merely assert that they *have* First Amendment rights, but specifically state that they were subjected to harassment and vilification during the board meeting of February 28, 2001 and then subsequently defamed by the defendant in a successful attempt to stop the plaintiffs' from any further public debate on the issues they attempted to raise in accordance with the rules.

As for the second and third steps of the qualified immunity analysis, the defendant essentially claims that he did not know that making malicious, unsupported, and defamatory remarks towards the plaintiffs in retaliation for attempting to exercise their First Amendment rights was prohibited behavior. This is utter foolishness. The plaintiff's attempted to present valid and serious issues to the board and were punished for their efforts. Finally a reasonable jury could conclude that the defendant retaliated against the plaintiffs for speaking out in a public forum and that it was not objectively reasonable to do so.

The majority of qualified immunity questions do depend upon the resolution of disputed factual claims and thus must await the determination of a properly-instructed jury considering special interrogatories. E.g., Prokey v. Watkins, 942 F.2d 67 (1st Cir. 1991); Rohman v. New York City Transit Authority, 215 F.3d 208, 214 (2d Cir. 2000); Castro v. United States, 34 F.3d 106 (2d Cir. 1994); Mays v. Mahoney, 23 F.3d 660 (2d Cir. 1994); Golino v. City of New Haven, 950 F.2d 864 (2d Cir. 1991); DiMarco v. Rome Hosp. & Murphy Memorial Hosp., 952 F.2d 661 (2d Cir. 1992); Posr v. Doherty, 944 F.2d 91 (2d Cir. 1991); Moffitt v. Town of Brookfield, 950 F.2d 880 (2d Cir. 1991); Karnes v. Skrutski, 62 F.3d 485 (3d Cir. 1995); Groman v. Township of Manalapan, 47 F.3d 628 (3d Cir. 1995); Harper v. Harris County, 21 F.3d 597 (5th Cir. 1994); Sova v. City of Mt. Pleasant, 142 F.3d 898 (6th Cir. 1998); Adams v. Metiva, 31 F.3d 375 (6th Cir. 1994); McCaslin v. Wilkins, 183 F.3d 775 (8th Cir. 1999); Lyles v. City of Barling, 181 F.3d 914 (8th Cir. 1999); DeBoer v. Pennington, 206 F.3d 857 (9th Cir. 2000);

Knox v. Southwest Airlines, 124 F.3d 1103 (9th Cir. 1997); Butler v. City of Norman, 992 F.2d 1053 (10th Cir. 1993); Salmon v. Schwarz, 948 F.2d 1131 (10th Cir. 1991); Harrell v. Decatur County, 22 F.3d 1570 (11th Cir. 1994).

### Plaintiffs' State Law Claims For Defamation Per Se and Defamation State A Claim Upon Which Relief May Be Granted

The defendant defamed the plaintiffs by way of remarks published in a newspaper article dated March 21, 2001. The defendant made false and malicious statements claiming that the plaintiffs concocted fraudulent documents and misrepresented themselves as members of the board of education to the American Red Cross. As articulated in Cweklinsky v. Mobil Chemical Co. 837 A.2d 759 Conn.,2004, "[t]o establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement. See QSP, Inc. v. Aetna Casualty & Surety Co., supra, at 356, 773 A.2d 906

"To fall within the category of libels that are actionable per se because they charge crime, the libel must be one which charges a crime which involves moral turpitude or to which an infamous penalty is attached." (Citations omitted.) Proto v. Bridgeport Herald Corp., 136 Conn. 557, 565-66, 72 A.2d 820 (1950). "Moral turpitude,

[our Supreme Court has] observed, is a vague and imprecise term to which no hard and fast definition can be given.... A general definition applicable to the case before us is that moral turpitude involves an act of inherent baseness, vileness or depravity in the private and social duties which man does to his fellow man or to society in general, contrary to the accepted rule of right and duty between man and law." (Citations omitted.) Moriarty v. Lippe, 162 Conn. 371, 383, 294 A.2d 326 (1972).

In their depositions the plaintiffs point to numerous instances of libelous statements made by the defendant and directed towards them. These statements directly implicate the plaintiffs in carrying out acts that involve moral turpitude. Stating that the Santoro's manufactured false documents and attempted to assassinate the character of certain people is a heinous and reprehensible accusation. Patricia Santoro was questioned at length about these statements including the Red Cross document. This was not a case of a defendant carrying out an investigation and reporting on his findings. The defendant went out of his way to paint the plaintiffs' in a clearly negative light to cause as much harm as possible to them in the community. These are not mere reporting of facts, but an unambiguous attempt to implicate the plaintiffs in an act of moral turpurtude.

Q: The first phrase, "the Red Cross can't identify it," what's false about that statement?

A: That's a statement, and then the next part of that sentence, "and someone represented themselves as a Board of Education member," we were the only

11

people there on the 28th, and we were the ones that distributed this material, so it alludes to the fact that it was us who misrepresented ourselves.

(Deposition of Patricia Santoro, pp 63-64)

The essential elements of a prima facie claim for defamation have been articulated by the plaintiffs. The court must decide the ultimate issue as to what constitutes libel Per Se and whether the plaintiff has satisfied all the elements of the tort. As exhaustive as the defendants' argument is, the bottom line is that the defendant published defamatory statements that sufficiently identified the plaintiffs to a third person causing the plaintiff injury. Additionally the statements were not true, were not mere opinions, and were inspired by malice. The statements were not ones made in the ordinary course of performing ones duties and were not couched in terms that an ordinary person would likely take to be mere opinion.

**Conclusion**

For all the foregoing reasons, the defendant's motion for summary judgement should be denied.

Respectfully submitted:

TIMOTHY J. MAHONEY (ct24651)
51 Elm Street, Suite 409
New Haven, CT 06510
203.562.9931
Fax: 203.776.9494
E-Mail: jrw@johnrwilliams.com
Plaintiff's Attorney

**CERTIFICATION OF SERVICE**

On the above date, a copy hereof was mailed, via first-class mail, postage prepaid, to: Melanie A. Dillon, Howd & Ludorf, 65 Wethersfield Ave, Hartford, CT 06114

TIMOTHY J. MAHONEY