UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PATRICIA SANTORO, and<br>CHET SANTORO<br>  *Plaintiffs,*<br><br>VS.<br><br>BRUCE STORM<br>  *Defendant.* | :<br>:<br>:<br>:<br>: Civil No. 3:01 CV1724 (AVC)<br>:<br>:<br>: |

### RULING ON THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is an action for damages alleging that the defendant's statements defamed the plaintiffs and had an unconstitutional "chilling effect" on the plaintiffs' ability to engage in their protected First Amendment rights to freedom of speech. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 as well as state common law tenets concerning defamation.

The defendant now moves for summary judgment pursuant to Fed.R.Civ.P. Rule 56(c) arguing that there are no genuine issues of material fact and that he is therefore entitled to judgment as a matter of law. The issue is whether the chilling effect of the defendant's statements, as alleged by the plaintiffs, is sufficient to establish an unconstitutional deprivation of their First Amendment rights to freedom of speech.

For the reasons hereinafter set forth, the court concludes that the plaintiffs have not established that the

actions of the defendant chilled their First Amendment right to freedom of speech. The motion for summary judgment (document no. 26) is therefore GRANTED.

## FACTS

Examination of the complaint, affidavits, pleadings, Rule 56(a) statements and exhibits accompanying the motion for summary judgment, and the responses thereto, disclose the following undisputed, material facts.

Patricia and Chet Santoro, the plaintiffs, were residents of the town of Branford, Connecticut with a child attending Branford high school, a school operated by the Branford board of education. Bruce Storm was the superintendent of the Branford board of education. In November 2000, a Branford athletic director cut the plaintiffs' son from the Branford high school basketball team. In December 2000, several parents informed Patricia Santoro that the Branford athletic directors were not qualified or certified for their positions.

Patricia Santoro then conducted research regarding the certification status of several Branford coaches and the athletic directors by writing letters to the Branford board of education, the State Department of Education, and the American Red Cross.

On February 28, 2001, Patricia and Chet Santoro made a presentation to the Branford board of education introducing the information that they had gathered. At the meeting, the plaintiffs presented and distributed evidence indicating that the Branford athletic directors and several coaches lacked certification and proper qualifications for their positions in violation of state statutes. The plaintiffs have not attended or attempted to speak at any subsequent Branford board of education meeting.

On March 8, 2001, The Sound, a weekly newspaper serving the town of Branford, published an article regarding the certification of the Branford coaching staff. The article contained a quotation attributed to Storm stating that a document presented by the plaintiffs was "manufactured." On March 21, 2001, Storm distributed a memorandum to school board members maintaining that certain documents produced by the plaintiffs were "fake and potentially fraudulent" and, among other statements, that "personal animosities" motivated the plaintiffs' complaints. These statements serve as the basis for the plaintiffs allegations of defamation and for the chilling of their rights to free speech.

On October 17, 2001, Patricia Santoro wrote a letter to the editor published in the Branford Review, a semi-weekly

newspaper serving Branford, expressing her opinion that the Branford board of education and the school administration had acted improperly in connection with the certification of the Branford coaches and athletic directors.

## STANDARD

Motions for summary judgment are granted if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.2d 506, 509 (2d Cir. 2002). The moving party must demonstrate the absence of any material factual issue genuinely in dispute. Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995).

The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. Matsushita Electric Industry Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Insurance Co., 804 F.2d 9, 12 (2d Cir. 1986). The non-moving party must produce facts sufficient to establish that there is a genuine factual issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

4

DISCUSSION

A. *Section 1983*

Storm first contends that the plaintiffs' "fear that they will be further vilified and made targets of public and untruthful statements" is not sufficient to sustain a cause of action for chilling "because the plaintiffs have not alleged either actual harm or specific threat of future harm." Specifically, Storm maintains that the plaintiffs have "failed to produce any evidence that demonstrates that they cannot exercise their First Amendment rights."

The plaintiffs respond that although they are "not prohibited from attending and speaking at school board meetings, it is the fact that [they] will not attend for fear of retribution for that appearance" that constitutes chilling. Specifically, the plaintiffs maintain that the defendant defamed them "in a successful attempt to stop the plaintiffs' from any further public debate on the issues they attempted to raise."

The First Amendment protects individuals' right to free speech and extends "so far as to prohibit state action that merely has a chilling effect on speech." Colombo v. O'Connell, 310 F.3d 115, 117 (2d Cir. 2002)(citing Laird v. Tatum, 408 U.S. 1, 12-13 (1972)). In order to sustain a cause of action under § 1983 claiming a "chilling effect" on

5

the right to free speech, the plaintiffs must allege facts indicating "that the defendant's actions had some actual, non-speculative chilling effect." Colombo v. O'Connell, 310 F.3d 115, 117 (2d Cir. 2002). "In determining whether a litigant has standing to challenge governmental action as a violation of the First Amendment, [the Supreme Court has] required that the litigant demonstrate [such harm]." Meese v. Keene, 481 U.S. 465, 472 (1987).

Subjective chill can only be sufficient to provide standing when combined with evidence of a future harm. See Meese v. Keene, 481 U.S. 465 (1987). In Meese, the plaintiff, an attorney and California State Senator, challenged a statute that labeled certain films as political propaganda claiming that such a label deterred him from exhibiting three films. Meese, 481 U.S. at 473. The plaintiff stated that if he exhibited the films while they bore such characterization, "his personal, political, and professional reputation would suffer and his ability to obtain re-election and to practice his profession would be impaired." Meese, 481 U.S. at 473.

The plaintiff supported his claims by submitting uncontradicted "detailed affidavits, including one describing the results of an opinion poll and another containing the views of an experienced political analyst,

6

supporting the conclusion that his exhibition of films that have been classified as 'political propaganda' by the Department of Justice would substantially harm his chances for reelection and would adversely affect his reputation in the community." Meese v. Keene, 481 U.S. 465, 473-74 (1987)(footnote omitted). The Supreme Court held that these allegations and affidavits were sufficient to establish a threat of a distinct and palpable injury. Meese, 481 U.S. at 472-73. The Court, however, further stated that "[i]f [the plaintiff] had merely alleged that the appellation deterred him by exercising a chilling effect on the exercise of his First Amendment rights, he would not have standing to seek its invalidation." Meese, 481 U.S. at 473.

In this case, Patricia Santoro stated that she "wouldn't go back to the Board with any problem." However, as the plaintiffs admit, neither the defendant nor the board of education has prohibited them from attending and speaking at school board meetings. More importantly, neither plaintiff has alleged a desire to return to a school board meeting. Patricia Santoro also stated that she would not hesitate to go to the press with a problem and, notably, did write a letter to the editor on October 17, 2001 regarding the Branford board of education.

7

These facts do not rise to the level of a deprivation of constitutional rights. The plaintiffs are entitled to speak publicly about their concerns, especially regarding the quality of public education. See, e.g., Pickering v. Board of Education, 391 U.S. 563 (1968)(holding that a teacher's criticism of the board of education was a matter of public concern entitled to First Amendment protection). Nevertheless, nothing in the complaint, or evidence provided by the plaintiffs, suggests that the defendant has prevented the plaintiffs from exercising that right. Since the case here involves no governmental restriction of speech that is "regulatory, preemptive, or compulsory in nature," Laird v. Tatum, 408 U.S. 1, 11 (1972), and because the plaintiffs do not sufficiently allege any actual or future harm, the injury-in-fact requirement necessary to support standing is not satisfied.

The plaintiffs nevertheless contend that "the appropriate standard for the court to examine is if in fact the plaintiff[s] experienced a chilling effect on [their] right to speak out in a public forum without fear of retaliation for that public appearance." Yet, the plaintiffs provide no legal authority for this proposition. The single case cited by the plaintiffs, Laird v. Tatum, 408 U.S. 1 (1972) is inapposite. Indeed, the Supreme Court

8

stated that, "[a]llegations of a *subjective* chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." Laird v. Tatum, 408 U.S. 1, 13-14 (1972)(emphasis added).

Therefore, the plaintiffs cannot maintain an action under § 1983, and summary judgment is GRANTED as to these claims.

B. *State Law Claims*

The plaintiffs have also alleged pendent state claims for defamation and defamation per se. Under 28 U.S.C. §1367(c)(3), "the district courts may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." While dismissal of the state claims is not mandatory, see Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343 (1988), the basis for retaining jurisdiction is weak when the federal claims are dismissed before trial, United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Accordingly, the court declines to exercise jurisdiction over the state law claims, and those claims are dismissed without prejudice.

9

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment (document no. 26) is GRANTED, and the pendent state claims are dismissed.

It is so ordered this _16TH_ day of August 2004, at Hartford, Connecticut.

                                          Alfred V. Covello
                                          United States District Judge